**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

TIFFANY S. PEREZ,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---------------------------------------------------------------X

25-CV-02786 (LJL) (VF)

**REPORT & RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE Lewis J. Liman, United States District Judge.**

Plaintiff Tiffany S. Perez ("Plaintiff") seeks judicial review of a final determination by Defendant, the Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). Before the Court is Plaintiff's motion for judgment on the pleadings pursuant to 42 U.S.C § 405(g). See ECF No. 11. For the reasons set forth below, I recommend that Plaintiff's motion be **GRANTED**.

## BACKGROUND

### A. Procedural History

Plaintiff, proceeding without an attorney, applied for DIB and SSI on March 6, 2015, alleging disability due to episodic mood disorder, anxiety, personality disorder, asthma, lower

back pain, and somatoform disorders. R. at 15, 223-24, 283.[1] Plaintiff alleges an onset date of September 1, 2014. R. at 15, 224. Plaintiff, unrepresented, appeared for a video conference before Administrative Law Judge ("ALJ") Sheena Barr on August 16, 2017, and appeared for another conference with counsel on December 12, 2017. R. at 15, 37-39, 70-72. After the hearings, in a decision dated May 2, 2018, ALJ Barr found Plaintiff not disabled. R. at 15-28. In a decision dated March 6, 2019, the Appeals Council denied Plaintiff's request for review of ALJ Barr's decision. R. at 1461. On May 6, 2019, Plaintiff sought review in federal court (Perez v. Comm'r Soc. Sec., No. 19-CV-4041 (KMK) (AEK) (S.D.N.Y. May 6, 2019)), and the parties stipulated to remand the case to the Social Security for further administrative proceedings on or about July 21, 2021. R. at 1468-70.

Upon remand, Plaintiff appeared for a hearing, represented by counsel, before ALJ Michael Devlin on July 26, 2023. R. at 1419-21. In an order dated August 14, 2023, the ALJ[2] found Plaintiff not disabled. R. at 1412. Plaintiff requested review by the Appeals Council, and the Appeals Council affirmed the decision of the ALJ on February 12, 2025. ECF No. 1 at 4-6. Plaintiff filed the complaint in this action on April 3, 2025, requesting that the Court modify the decision of the Commissioner or remand back to the Commissioner for further consideration. ECF No. 1 at ¶ 9(c). On June 6, 2025, the Commissioner filed the Administrative Record, constituting the answer. ECF No. 8. On September 9, 2025, Plaintiff filed her motion for judgment on the pleadings pursuant to 42 U.S.C. § 405(g). ECF Nos. 11-12. On September 10, 2025, the Honorable Lewis J. Liman referred the motion to the undersigned. ECF No. 13. On

[1] The page numbers for citations to the Social Security Record at ECF No. 8 are to the original pagination in those documents. Otherwise, the page numbers for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

[2] References to the ALJ are to ALJ Devlin, the ALJ who issued the opinion on review in this matter, unless otherwise specified.

September 25, 2025, the Commissioner submitted an opposition brief. ECF No. 15. On January 7, 2026, Plaintiff filed a reply brief. ECF No. 16.

**B. Plaintiff's Testimony**

Plaintiff is a 27-year-old female who left high school in tenth grade but received her GED. See ECF No. 8 (Social Security Record ("R.")) at 46, 1425. She has had one job, that lasted for less than one month, as a cook and cashier at Burger King in 2008. R. at 45, 1425, 1581. Plaintiff lives with her three children and two brothers. R. at 52. Plaintiff receives income from babysitting her cousin, who she also refers to as her nephew, around three times a week or over weekends in 2016, 2021, and 2022. R. at 47-50. Other members of the family, including Plaintiff's grandmother and brothers, assist Plaintiff with the babysitting. R. at 49-51. Plaintiff is "compulsive" when it comes to cleaning. R at 53. She would clean the home, but it would take her hours to finish because she would "rearrang[e] and redecorate[e] and do[ ] a whole bunch of stuff when [she] was just initially starting to clean the kitchen[.]" R. at 52.

Plaintiff does not take public transportation because it makes her feel "closed in," so she takes cabs or has her family drive her to appointments. R. at 54-55. Plaintiff has asthma, which is set off by "[d]ust, weather," "temperatures," "pollen, and chemicals, and all kinds of stuff." R. at 1426. Plaintiff is diagnosed with bipolar disorder, OCD, anxiety, and personality disorder. R. at 1426. Plaintiff takes "[a] couple" of medications for her anxiety, including Prozac, Ambien, and Seroquel, but it is not helping "a great deal." R. at 55, 60.[3]

Plaintiff's symptoms include feeling nervous, closed in, not going out after a certain time, not being in places with too many people, not sleeping, having days of extreme energy then no energy, locking the doors, and checking the stove and oven due to her fear of fire. R. at 56.

[3] At her hearing in July 2023, Plaintiff stated that she was taking Abilify, Benzodiazepine, and Hydroxyzine. R. at 1427.

Plaintiff does not get along with others well and socializes very little. R. at 57-58, 1429. Plaintiff gets panic attacks four to five times per week. R. at 1429. She gets anxiety attacks when she is underground or when she has "too much going on around [her]." R. at 59. Plaintiff also has "anger problems," and "the smallest thing [will] trigger[ ] [her] to do[ ] something so drastic." R. at 62. Someone "simply looking at [her]" can make her angry. Id. She "sometimes" forgets her appointments and as of July 2023, was having trouble remembering things and was "starting" to get very forgetful. R. at 58, 1430. Plaintiff testified that it would be hard for her to listen to instructions for five minutes and then do what she was instructed. R. at 1430. Additionally, her diagnoses make it difficult for her to travel and concentrate. R. at 1428. Plaintiff has not been hospitalized or admitted for mental health but had an anxiety attack at the hospital. R. at 58.

**C. Medical Evidence**

1. Morgan Schulman – Licensed Clinical Social Worker

Morgan Schulman, a Licensed Clinical Social Worker ("Schulman"), saw Plaintiff on September 17, 2014. R. at 476. In her report, Schulman noted that Plaintiff was terrified of the stove, felt like she needed someone to talk to, and could not live her life "because of family stuff," including taking care of five kids. R. at 471. Plaintiff reported to Schulman that she was not working because of her anxiety issues. Id. Schulman noted that Plaintiff would benefit from cognitive behavior therapy as well as medication. R. at 475. Schulman diagnosed Plaintiff with generalized anxiety disorder, PTSD, and cyclothymic disorder. R. at 476. Schulman made similar findings in a report dated October 27, 2014. R. at 388-91.

2. Dr. Pik Sai Yung – Psychiatrist

Plaintiff saw Dr. Pik Sai Yung for a psychological examination on December 13, 2014. R. at 393. Dr. Yung noted that Plaintiff reported being afraid of fire, which caused her to repeatedly check the stove and door, leave the window open to ensure no smell of smoke, and

not turn on the stove. Id. Dr. Yung reported that Plaintiff found it difficult to resist the urge to clean, organize, or check the stove or door. Id. Plaintiff reported a low history of stress tolerance and irritability, and although Plaintiff denied physical aggression, she stated that she was verbally abusive. Id. Dr. Yung noted that Plaintiff had difficulty falling asleep and excessive worries which led to irritability, fatigue, muscle tension, and trouble with concentration. Id. Plaintiff told Dr. Yung that she "does not care for friendship" and has not had any "peer relationship[s] since childhood." Id. Dr. Yung noted that Plaintiff reported being supported by her grandparents, aunts, and maternal step-siblings, that she had no behavioral issues in school, and that her family was "always accommodating her outbursts and behavior." Id. Plaintiff had a "nervous breakdown" after taking Buspar, an anxiety medication, for two days and went to the hospital. R. at 394. Dr. Yung noted that Plaintiff's mood was irritable, her thought process was intact, her thought content was within normal limits, her cognition impairment was within normal limits, and her intelligence was average. Id. Dr. Yung diagnosed Plaintiff with Cluster B personality disorder, generalized anxiety disorder, OCD, asthma, and tobacco use disorder. R. at 395. Dr. Yung found that Plaintiff presented with "significant symptoms" of generalized anxiety and recommended that she start medication and continue psychotherapy. Id.

Dr. Yung saw Plaintiff again on January 30, 2015. R. at 571. Plaintiff reported that she took Lexapro and Trazodone for two days but stopped taking those medications because they made her more agitated. Id. Plaintiff reported significant anxiety, restlessness, and fatigue due to insomnia. Id. Dr. Yung noted that Plaintiff's mood was irritable, her affect was labile, her thought process and judgment were intact, her thought content was within normal limits, her cognition impairment was within normal limits, and her intelligence was average. R. at 572. Dr. Yung recommended that Plaintiff take Prozac and Ambien and continue psychotherapy. Id.

3. Dr. Lucy Kim – Psychiatrist

Dr. Kim saw Plaintiff for a psychiatric evaluation on May 9, 2015. R. at 408. Dr. Kim noted that Plaintiff was driven to the appointment by her boyfriend. Id. Dr. Kim noted that Plaintiff suffers from "generalized anxiety disorder, obsessive-compulsive disorder, PTSD, and personality disorder[.]" Id. Plaintiff reported having a hard time falling asleep, feeling anxious, worried, and irritable, with a strong compulsion to clean her house, and that "when she is prevented from completing her rituals, she gets very upset." Id. Dr. Kim also noted that Plaintiff was "arrested for aggravated assault and harassment." R. at 409. Plaintiff's demeanor was cooperative, and her "[m]anner of relating, social skills, and overall presentation were adequate." Id. Dr. Kim found Plaintiff's speech fluent, she was "[c]oherent and goal-directed with no evidence of hallucinations, delusions, or paranoia," and her attention, concentration, and memory skills were "[i]ntact," her intellectual functioning was average, her insight was fair, and her judgment was fair. R. at 409-10. Dr. Kim also found that Plaintiff was able to dress, bathe, groom herself, cook, clean, do laundry, shop, and manage money on her own. R. at 410. Dr. Kim noted that Plaintiff did not have a driver's license, and that Plaintiff did not take public transportation due to her anxiety. Id.

Dr. Kim concluded that Plaintiff had moderate limitations in: maintaining attention and concentration; maintaining a regular schedule; performing complex tasks independently; making appropriate decisions; and appropriately dealing with stress. R. at 410. Dr. Kim found that Plaintiff had no limitations in: following and understanding simple instructions; performing simple tasks independently; learning new tasks; and relating adequately to others. Id. Dr. Kim noted that Plaintiff's difficulties are "caused by distractibility and psychological symptoms." Id. Dr. Kim concluded that Plaintiff's psychiatric problems "may significantly interfere with

[Plaintiff's] ability to function on a daily basis." Id. Dr. Kim diagnosed Plaintiff with PTSD, OCD, generalized anxiety disorder, and unspecified personality disorder, and noted that Plaintiff reported having asthma. Id. Dr. Kim recommended that Plaintiff continue with psychological and psychiatric treatment. R. at 411. Dr. Kim found Plaintiff's prognosis as "guarded given significant OCD symptoms." Id.

4. Dr. Carol McLean Long – Physician

Dr. Long saw Plaintiff on May 9, 2015 for an internal medicine examination. R. at 412. Plaintiff stated that she had personality disorder, OCD, and anxiety that were diagnosed in September 2014. Id. Dr. Long noted that Plaintiff reported being hospitalized in 2014 because she "felt like her heart was skipping a beat," and was diagnosed with palpitation. Id. Plaintiff was taking Fluoxetine, Ambien, Ventolin, Albuterol, and Oxycodone. Id. Dr. Long noted that Plaintiff was able to cook five days a week, clean and do childcare daily, do laundry weekly, and bathe and dress daily. R. at 412-13. Dr. Long found that Plaintiff's gait, skin, eyes, ears, nose, chest and lungs, flexion, range of motion, extremities, and fine motor activity all appeared normal. R. at 413-14. Plaintiff "appeared oriented in all spheres," had "[n]o evidence of hallucinations or delusions," and there was "[n]o evidence of impaired judgment or significant memory impairment." R. at 414. Dr. Long diagnosed Plaintiff with asthma, personality disorder, OCD, and anxiety. Id. Dr. Long found that Plaintiff had no limitations in her ability to sit, stand, climb, push, pull, or carry heavy objects, but recommended that Plaintiff avoid smoke, dust, and respiratory irritants due to her asthma. R. at 415.

Dr. Long saw Plaintiff for another internal medicine examination on July 7, 2016. R. at 425. Dr. Long noted that Plaintiff was able to walk five blocks, sit for 25 minutes, stand for 40 minutes, and climb three flights of stairs. Id. Dr. Long again noted that Plaintiff was able to cook

five days a week, clean and do childcare daily, and do laundry weekly, but that she mostly "stay[ed] home and clean[ed]." R. at 425-26. Dr. Long found that Plaintiff's gait, skin, eyes, ears, nose, chest and lungs, flexion, range of motion, extremities, and fine motor activity all appeared normal. R. at 426-27. Dr. Long diagnosed Plaintiff with a history of asthma, history of Cluster B personality disorder, intermittent explosive disorder, generalized anxiety disorder, and could not "[r]ule out" obsessive compulsive disorder. R. at 427. Dr. Long concluded that Plaintiff had no limitations. R. at 428.

5. Dr. S. Bhutwala – State Agency Medical Consultant

Dr. S. Bhutwala, a State Agency consultant, reviewed Plaintiff's records and prepared an opinion dated June 2, 2015. R. at 85-95. Dr. Bhutwala diagnosed Plaintiff with non-severe asthma, severe anxiety disorders, and severe personality disorders. R. at 89. Dr. Bhutwala noted that Plaintiff was mildly restricted in her activities of daily living and moderately restricted in her ability to function socially, maintain concentration, and decompensation. Id. As to Plaintiff's concentration and persistence, Dr. Bhutwala found that there was no evidence that Plaintiff had limitations in the ability to remember locations and work-like procedures or remember short and simple instructions, and that Plaintiff was "[n]ot significantly limited" in her ability to understand and remember detailed instructions." R. at 92. Dr. Bhutwala also found no evidence that Plaintiff could not carry out very short and simple instructions or sustain an ordinary routine without special supervision, and that Plaintiff was "[n]ot significantly limited" in her ability to make simple work-related decisions. Id. Dr. Bhutwala found that Plaintiff had moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, work in coordination with or in proximity to others without being distracted by them,

and complete a normal workday and workweek without interruptions from psychologically based symptoms. Id.

As to Plaintiff's social interaction limitations, Dr. Bhutwala also found Plaintiff was "[n]ot significantly limited" in her ability to ask simple questions or request assistance, but was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. at 93. Finally, Dr. Bhutwala found that there was no evidence that Plaintiff had limitations as it concerned being aware of normal hazards and taking appropriate precautions, but she did have moderate limitations in her ability to "respond appropriately to changes in the work setting," "travel in unfamiliar places or use public transportation," and "set realistic goals or make plans independently of others." Id.

6. J. Koncak – Non-Medical State Disability Examiner

J. Koncak issued an opinion dated June 2, 2015 based on Plaintiff's records alone. R. at 90-91. Dr. Koncak found that Plaintiff had environmental limitations, including needing to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and fumes, odors, dusts, gases, and poor ventilation. R. at 91.

7. Dr. Ruby Phillips – Psychiatrist

Dr. Phillips performed a psychiatric evaluation of Plaintiff on July 7, 2016. R. at 416. Dr. Phillips noted that Plaintiff was driven to the appointment by a friend, was employed in 2015 as a babysitter and held that job for three years but "left because she was no longer needed," and was not currently employed. Id. Plaintiff reported no medical hospitalizations, her medical

conditions included asthma, and her current medications included Prozac, Ambien, Albuterol, and Flovent. Id. Plaintiff also reported difficulty falling asleep that got better with medication, depressive symptoms including dysphoric mood, irritability, and social withdrawal, as well as anxiety-related symptoms including apprehension, restlessness, and fearfulness of crowds. Id. Plaintiff also reported panic attacks that occurred twice per week and cognitive symptoms including short-term memory deficits and concentration difficulties. Id. Dr. Phillips found that Plaintiff's appearance and behavior were normal, her speech was fluent, her thought processes were coherent, her mood was neutral, and her attention, concentration, and memory skills were intact. R. at 417-18. Plaintiff's intellectual functioning was average and her insight and judgment were fair. R. at 418. Plaintiff was able to dress, bathe, and groom herself, cook and prepare food, clean, do laundry, and manage her money. Id. Dr. Phillips noted Plaintiff was not able to take public transportation due to her anxiety, that she socializes mostly with family, and that she used to enjoy reading but could no longer concentrate enough to read. Id.

Dr. Phillips concluded that there was no evidence of limitation in Plaintiff's ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions. R. at 418. Dr. Phillips found Plaintiff moderately limited in her ability to relate adequately with others and to appropriately deal with stress, which was caused by her anxiety. Id. Dr. Phillips concluded that the results of the evaluation were consistent with psychiatric problems but were not significant enough to interfere with Plaintiff's ability to function on a daily basis. Id. Dr. Phillips diagnosed Plaintiff with panic disorder and generalized anxiety disorder. R. at 418-19. Dr. Phillips recommended that Plaintiff continue with psychological and psychiatric treatment. R. at 419.

8. Nurse Practitioner Shauna Roach

Nurse Practitioner Shauna Roach began seeing Plaintiff in September 2016. R. at 53-54, 977, 1427. During a visit on September 16, 2016, Plaintiff reported being "easily angered by others" and having "'put[ ] hand[s] on people' when angered." R. at 977. On December 1, 2016, Roach recommended that Plaintiff take medication for "mood stability" and Plaintiff reported wanting to "work on [her] angry outbursts so [she] can improve [her] relationships." R. at 1002-03. On May 11, 2017, Roach noted that Plaintiff "endorse[d] mood l[]ability, depressing feelings, and racing thoughts." R. at 1028.

Roach prepared a Medical Source Statement dated November 28, 2017. R. at 1049-52. Plaintiff had the following symptoms: sleep disturbance, mood disturbance, emotional lability, difficulty thinking or concentrating, generalized persistent anxiety, and irritability. R. at 1049. Roach found that Plaintiff had "problems concentrating and focusing, mood lability, anxiety, [and] depressed mood." R. at 1050. Roach noted that Plaintiff's impairments would cause Plaintiff to be absent from work more than three times a month. Id. Plaintiff had moderate loss in the following categories: "remember[ing] locations and work-like procedures," "understand[ing] and remember[ing] very short, simple instructions," "understand[ing] and remember[ing] detailed instructions," "maintain[ing] regular attendance and be[ing] punctual," "sustain[ing] an ordinary routine without special supervision," "mak[ing] simple work-related decisions," "maintain[ing] socially appropriate behavior," "respond[ing] appropriately to changes in a routine work setting," and "travel[ing] in unfamiliar places." R. at 1051. Plaintiff had marked loss in: "carry[ing] out very short, simple instructions," "carry[ing] out detailed instructions," "maintain[ing] attention and concentration for extended periods (*i.e.* 2 hour segments)," "deal[ing] with stress or semi-skilled and skilled work," "work[ing] in coordination with or

proximity to others without being unduly distracted," "complet[ing] a normal workday or work week without interruptions from psychologically based symptoms," "perform[ing] at a consistent pace without an unreasonable number and length of rest periods," "interact[ing] appropriately with the public," "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," "gett[ing] along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes," "us[ing] public transportation," and "set[ting] realistic goals or mak[ing] plans independently of others." Id. Roach did not check any boxes in the section regarding the degree to which functional limitations exist as a result of Plaintiff's mental impairment. R. at 1052.

Roach saw Plaintiff at various points between 2017 to 2022. R. at 1041 (July 20, 2017); R. at 1134 (October 20, 2017); R. at 1386 (April 6, 2018); R. at 1889 (March 27, 2020); R. at 1775 (January 27, 2022). Roach completed another Medical Source Statement on January 26, 2022. R. at 1608-11. Plaintiff was diagnosed with bipolar disorder and generalized anxiety disorder. R. at 1608. Plaintiff had symptoms of poor memory, appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, perceptual disturbances, time or place disorientation, catatonia or grossly disorganized behavior, social withdrawal or isolation, blunt, flat or inappropriate affect, illogical thinking or loosening of associations, decreased energy, manic syndrome, obsessions or compulsions, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and hostility and irritability. Id. Plaintiff had difficulty with concentration and felt anxious, easily frustrated, and easily

distracted. R. at 1609. Roach indicated that Plaintiff's impairments would cause her to be absent from work more than three times a month. Id.

Roach recorded Plaintiff as having moderate loss in: her ability to "understand and remember very short, simple instructions" and "carry out very short, simple instructions." R. at 1610. Plaintiff had marked loss in: "remember[ing] locations and work-like procedures," "understand[ing] and remember[ing] detailed instructions," "sustain[ing] an ordinary routine without special supervision," "mak[ing] simple work-related decisions," "ask[ing] simple questions or request[ing] assistance," and "respond[ing] appropriately to changes in a routine work setting." Id. Plaintiff also had extreme loss in: "carry[ing] out detailed instructions," "maintain[ing] attention and concentration for extended periods (*i.e.* 2 hour segments)," "maintain[ing] attendance and be[ing] punctual," "deal[ing] with stress or semi-skilled and skilled work," "work[ing] in coordination with or proximity to others without being unduly distracted," "complet[ing] a normal workday or work week without interruptions from psychologically based symptoms," "perform[ing] at a consistent pace without an unreasonable number and length of rest periods," "interact[ing] appropriately with the public," "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," "gett[ing] along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes," "maintain[ing] socially appropriate behavior," "travel[ling] in unfamiliar places," and "us[ing] public transportation." Id. Roach noted that Plaintiff had extreme difficulties in maintaining social functioning and had continual episodes of deterioration. R. at 1611.

9. Fedcap Biopsychosocial Summary

A Fedcap Biopsychosocial Summary, signed by Dr. Mohammad Shuja, was completed on December 23, 2017. R. at 1097-1129. Plaintiff was previously found to have "Unstable

Medical and/or Mental Health Conditions That Require Treatment," including mood disorder, depression, anxiety, OCD, bipolar disorder, and asthma. R. at 1098. Plaintiff reported that she could not walk more than a block without feeling fatigue and could only climb one flight of stairs due to her asthma. R. at 1106-07. Plaintiff was assessed as not having "[c]ognitive ([u]nderstanding, remembering, maintaining attention)" issues, but did have "[e]motional ([t]olerating stress, adapting to change, regulating emotions/mood)," "[i]nterpersonal ([r]elating appropriately to co-workers, accepting supervision)," as well as respiratory problems. R. at 1125. Plaintiff was assessed as needing a work environment that avoided irritants/chemicals, that was low stress, and that did not have dust, smoke, odors, or fumes. R. at 1126. Plaintiff was ultimately diagnosed with unstable bipolar disorder, unstable anxiety, unstable OCD, and stable asthma. R. at 1127-28. The report found that Plaintiff was temporarily unable to work. R. at 1128.

10. Dr. Joshua Goldstein – Psychiatrist

Dr. Joshua Goldstein saw Plaintiff on June 20, 2023. R. at 1972. Dr. Goldstein noted that Plaintiff was driven to the appointment by her cousin and was unable to work due to her mental-health difficulties. Id. Dr. Goldstein noted that Plaintiff denied any history of psychiatric hospitalizations and that Plaintiff spoke to a therapist and psychiatrist every two weeks. Id. Plaintiff reported having difficulty falling asleep, increased appetite with weight gain, "depressive symptoms including dysphoric moods, excessive crying, loss of usual interest, irritability, diminished sense of pleasure, social withdrawal, and concentration difficulties." Id. Dr. Goldstein noted Plaintiff's anxiety related symptoms including "excessive apprehension and worry, irritability, avoidance of social settings, restlessness, obsession, compulsion, and difficulty concentrating." Id. Dr. Goldstein also noted Plaintiff's panic attacks, mood swings, and

short-term memory deficits and concentration difficulties. R. at 1973. Plaintiff was coherent, her affect was irritated, her mood was irritable, her attention and concentration were intact, her recent and remote memory skills were mildly impaired, her cognitive functioning was average to below average, and her insight and judgment were fair. R. at 1974. Plaintiff reported that she was able to "cook[ ], clean [ ], [do] laundry, shop[ ], dress, bathe, [and] groom herself," and that she has friends. Id. Dr. Goldstein concluded that there was mild evidence of limitation in: understanding, remembering, or applying simple directions and instructions as well as complex directions and instructions, "using reason and judgment to make work related decisions," "interacting adequately with supervisors, coworkers, and the public," "sustaining concentration and performing a task at a consistent pace," "sustaining an ordinary routine and regular attendance at work," "regulating emotions, controlling behavior, and maintaining well-being," and "awareness of normal hazards and taking appropriate precautions." Id. Dr. Goldstein found that his results were "consistent with psychiatric problems," but that it did "not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." R. at 1975. Dr. Goldstein diagnosed Plaintiff with adjustment disorder and unspecific bipolar disorder. Id.

11. Dr. Laiping Xie – Physician

Plaintiff was seen by Dr. Laiping Xie on June 20, 2023. R. at 1967. Dr. Xie noted that Plaintiff cooks three times a week, cleans and does laundry daily, and goes shopping. Id. Dr. Xie diagnosed Plaintiff with asthma, hypertension, and a right eye problem. Id.

**D. The ALJ's Decision**

After Plaintiff's case was remanded, Plaintiff appeared for a hearing before ALJ Michael Devlin on July 26, 2023. R. at 1419-21. During the hearing, the ALJ asked the Vocational Expert to consider whether jobs would be available in the economy for the following hypothetical

person: a person who (1) had no exertional limits, but should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; (2) was able to understand, remember and carry out simple tasks, and could occasionally interact with co-workers and supervisors; (3) could have little to no contact with the general public, could have no independent decision making, could tolerate only minimal changes in work and processes, and could concentrate for up to two hours at a time; and (4) had to work in a low stress environment. R. at 1432-33. The Vocational Expert testified that such a person could work as a price marker, routing clerk, or cleaner. R. at 1433. The ALJ then modified the hypothetical person to one who was unable to interact appropriately with co-workers, supervisors, or the general public on a consistent basis, and also could not work even in a low-stress environment. Id. The ALJ asked the Vocational Expert if there were jobs available for that hypothetical person and the Vocational Expert testified that there were none because the "interaction component along with the" inability "to handle low stress" would "eliminate all jobs." R. at 1433-34. Upon questioning by Plaintiff's counsel, the Vocational Expert clarified that no jobs would be available for a person who was absent more than once per month or was off-task by more than 15% of the time. R. at 1434-35. The Vocational Expert also testified that no jobs would be available for a person who could only follow instructions, maintain concentration, deal with stress, and coordinate with others for a third of the day. R. at 1435.

On August 14, 2023, on remand from the Appeals Council pursuant to a remand from the United States District Court for the Southern District of New York, the ALJ determined that Plaintiff was not disabled under the Act. R. at 1402-12. At step one, the ALJ found Plaintiff met the insured status requirements of the Act. R. at 1404. At step two, the ALJ found that Plaintiff engaged in substantial gainful employment during periods of time in 2016, 2021, and 2022. Id.

Specifically, the ALJ found that Plaintiff performed babysitting services for her relatives and Plaintiff had "significant earnings each year," which exceeded the presumptive threshold. Id. The ALJ rejected counsel's argument that Plaintiff's work as a babysitter for a family member was supported employment, because "[n]othing in the record suggests that [Plaintiff] received more supervision than other workers doing the same or a similar job for the same pay; had fewer or simpler tasks to complete than other workers doing the same job for the same pay; or had a job coach or mentor who helped her perform some tasks." Id. Nonetheless, the ALJ continued to step three, because the ALJ found that there had been a continuous twelve-month period where Plaintiff did not engage in substantial gainful activity. Id.

At step three, the ALJ found that Plaintiff had the following severe impairments: "asthma; episodic mood disorder; adjustment disorder with depressed and anxious mood; bipolar disorder; generalized anxiety disorder; panic disorder; personality disorder; intermittent explosive disorder; [OCD]; and [PTSD]." R. at 1404. The ALJ also found that Plaintiff had the non-severe impairment of high blood pressure. R. at 1405. However, the ALJ found that Plaintiff's impairments or combination of impairments did not meet the severity of one of the statutory impairments. Id.

At step four, the ALJ considered Plaintiff's asthma, but found that the evidence did not show that Plaintiff had a forced expiratory volume that met the statutory criteria, or that Plaintiff's asthma required three hospitalizations within a 12-month period as required to find a disability under the statute. Id. The ALJ also considered Plaintiff's mental impairments and found that Plaintiff did not have an extreme limitation or two marked limitations that prevented her from functioning independently appropriately or effectively and on a sustained basis. R at 1405. The ALJ found that Plaintiff had no limitation in understanding, remembering,

concentrating, persisting, maintaining pace, or applying information, considering Plaintiff's consultative examinations from 2016 and 2023 showing that Plaintiff had average intellectual functioning. Id. The ALJ also found that Plaintiff had a moderate limitation in interacting with others based on her mood swings and emotional outbursts, and a moderate limitation in adapting or managing herself, as she was able to cook five days a week, clean daily, do laundry weekly, care for her personal hygiene, and perform childcare daily. R. at 1406. The ALJ also found that Plaintiff did not have a mental-health impairment that was serious or persistent that established a mental-health disorder over a period of at least two years. Id.

Based on these conclusions, ALJ found that Plaintiff had the RFC to perform a full range of work with limitations to "concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; little to no contact with the general public; able to work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes); and able to consistently maintain concentration and focus for up to two hours at a time." R. at 1406. The ALJ found the RFC was supported by the opinions of Dr. Kim, Dr. Phillips, and Dr. Goldstein. R. at 1411. The RFC addressed Plaintiff's mental limitations "by restricting her to simple tasks requiring no more than two hours of concentration and focus at a time," considered Plaintiff's social difficulties by "limiting [Plaintiff]'s interaction with others," and accounted for Plaintiff's difficulties in adapting and managing herself by "limiting her to working only in a low stress work environment." Id. The RFC also accounted for Plaintiff's asthma by limiting her to work environments where "she can

avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants." Id.

The ALJ considered Plaintiff's testimony at the hearing, noting that Plaintiff reported symptoms of anxiety, compulsion to clean her house, symptoms of panic attacks twice a week, and short-term memory deficits. R. at 1407. The ALJ concluded that although Plaintiff's impairments could cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence or supported by the record. Id. Specifically, the ALJ noted that although Plaintiff claimed to have difficulty with "anxiety, impulsivity, and social interaction," her "mental status exams have been mostly normal." Id.

Beginning with Dr. Kim, the ALJ afforded "significant weight" to her opinion because it was generally consistent with the record. R. at 1408. The ALJ pointed to Dr. Kim's findings in May 2015[4] that found Plaintiff's insight and judgment were fair and other mental-health findings normal. R. at 1407-08. The ALJ considered Dr. Kim's finding that Plaintiff had moderate limitations in maintaining attention and concentration, maintaining a regular schedule, performing complex tasks independently, making appropriate decisions, and dealing with stress. R. at 1408. The ALJ also considered Dr. Kim's findings that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, and relate adequately with others. Id. The ALJ concluded that the RFC accounted for Dr. Kim's opinion by limiting Plaintiff to simple tasks with limited interaction with others in a low-stress environment. Id.

[4] The ALJ's decision noted that the examination occurred in "May 205" (R. at 1407), but a review of the medical records shows the examination was completed in May 2015. R. at 408.

The ALJ also considered the opinion of Dr. Phillips from July 2016, giving it significant weight because it was consistent with the overall record. R. at 1408. The ALJ found that, like Dr. Kim, Dr. Phillips also concluded that Plaintiff's "insight and judgment were fair" and "the findings on her mental status exam were normal." Id. Dr. Phillips found that Plaintiff "could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions," but was "moderately limited in the ability to relate adequately with others and to appropriately deal with stress" caused by Plaintiff's anxiety. Id. Dr. Phillips found that Plaintiff's "psychiatric problems" were not "significant enough to interfere with [her] ability to function daily." Id. The ALJ pointed to Dr. Phillips' finding that Plaintiff "had no limitations in understanding or remembering simple or complex instructions, carrying out such instructions, or making judgments on simple or complex work-related decisions," and "no limitation in responding appropriately to usual work situations and to changes in a routine work setting." Id. Finally, the ALJ noted Dr. Phillips' finding that Plaintiff had reported extreme anxiety, irritability, and low frustration tolerance. Id. The ALJ stated that the RFC accounted for Dr. Phillips' opinion by limiting Plaintiff "to simple tasks with limited interaction with others in a low stress work environment." Id.

Next, the ALJ considered the opinion of Dr. Goldstein from June 2023. R. at 1408. The ALJ afforded "significant weight" to Dr. Goldstein's opinion because it was consistent with the overall record. R. at 1409. The ALJ noted Dr. Goldstein's report that Plaintiff presented with an "irritable affect and irritated mood" and that Plaintiff's "memory skills were mildly impaired and her insight and judgment were both fair." R. at 1408. The ALJ pointed to Dr. Goldstein's finding that Plaintiff had "mild limitations in the ability to understand, remember and carry out

instructions and to interact appropriately with supervisors, coworkers, and the public," as well as the "ability to understand, remember, or apply simple and complex directions and instructions; use reason and judgment to make work related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotions, control behavior, and maintain wellbeing; and be aware of normal hazards and take appropriate precautions." R. at 1408-09. The ALJ also noted Dr. Goldstein's conclusion that Plaintiff's psychiatric problems "did not appear to be significant enough to interfere with [her] ability to function daily." R. at 1409.

The ALJ considered the opinion of Roach, who completed two medical source statements in November 2017 and January 2022. R. at 1409. The ALJ considered Roach's testimony although Roach was "not an acceptable medical source." Id. The ALJ pointed to Roach's indication that Plaintiff "experienced sleep disturbance, mood disturbance, emotional lability, difficulty thinking or concentrating, generalized persistent anxiety, and irritability" and "would likely be absent from work more than three days per month because of her impairments." Id. The ALJ also noted that Roach found Plaintiff "had a moderate or marked limitation in all categories of mental functioning." Id. The ALJ pointed to Roach's January 2022 report, which indicated that Plaintiff's symptoms had increased and where Roach opined that Plaintiff "would likely be absent from work more than three days per month because of her impairments." Id. In that report, Roach also noted that Plaintiff had "moderate-to-extreme limitations in understanding, remembering, and carrying out instructions," and "the ability to respond appropriately to supervision, coworkers, and work pressure in a work setting." Id. The ALJ ultimately afforded

Roach's opinion limited weight, because Roach's findings were not consistent with Plaintiff's "reported level of activities, including working at substantial gainful activity." Id.

The ALJ also considered the report by licensed social worker Schulman, which was issued after Plaintiff was evaluated in December 2014. R. at 1409. The ALJ afforded little weight to Schulman's opinion because she did not opine on Plaintiff's degree of disability. Id.

The ALJ considered Plaintiff's physical impairments, including her asthma. R. at 1409. The ALJ pointed to the physical consultative examination performed by Dr. Long in May 2015. R. at 1409-10. Dr. Long "reported normal examination findings," opined that Plaintiff "had no exertional limitations," but that Plaintiff "should avoid any smoke, dust, or respiratory irritants because of her asthma." R. at 1409. The ALJ afforded significant weight to Dr. Long's opinions as consistent with the medical evidence and noted that the ALJ's RFC "accounts for Dr. Long's opinion by indicating that the claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants." R. at 1409-10. However, the ALJ afforded little weight to Dr. Long's findings in an updated consultative examination from July 2016. R. at 1410. The ALJ found that "Dr. Long's consultative examination opinion that [Plaintiff] has no physical limitations d[id] not account for [her] respiratory impairment," the "medical source statement indicating that [she] has limitations in exertion, posture, and use of hands/arms is not supported by the record or by Dr. Long's own examination findings." Id.

The ALJ also considered the opinion of Dr. Xie from June 2023. R. at 1410. The ALJ afforded significant weight to Dr. Xie's opinion because it was consistent with medical evidence of record which showed that Plaintiff had no physical limitations, other than her respiratory limitations. Id.

The ALJ considered the opinion of Dr. Bhutwala, who reviewed Plaintiff's records in June 2015. R. at 1410. The ALJ gave significant weight to Dr. Bhutwala's opinion because it was consistent with the overall record. Id. The ALJ noted Dr. Bhutwala's finding that Plaintiff had "moderate limitations in the abilities to maintain social functioning and maintain concentration, persistence or pace" and "a mild limitation in activities of daily living and had had no episodes of decompensation." Id.

Finally, the ALJ noted that although there was an assessment by the non-medical State disability examiner, he was not considering it as opinion evidence, relying on a regulation that indicated that such assessments were not opinion evidence that to be considered by an ALJ. R. at 1410-11.

As to step five, the ALJ found that there were jobs that Plaintiff could perform considering Plaintiff's age, education, work experience, and RFC. R. at 1411. The ALJ noted that Plaintiff had no prior work experience, was 23 years old, and had a high school education. Id. Considering those factors with the recommended RFC, the Vocational Expert testified that Plaintiff was able to perform work as a price marker, routing clerk, or cleaner. R. at 1411-12. Thus, the ALJ concluded that Plaintiff was not disabled. R. at 1412.

## DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides[.]" 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence

in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks and citations omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Selian, 708 F.3d at 417 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation

marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

2. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment" (id. at § 404.1520(a)(4)(ii)), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities" (id. at § 404.1520(c)). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at §§ 404.1520(a)(4)(iii), 404.1520(d). If so, the claimant is considered disabled. Id. Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R.

§ 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. at § 405.1520(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. at § 405.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. at § 405.1520(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

**B. Analysis**

1. The ALJ erred in failing to properly evaluate the medical opinions of Nurse Practitioner Roach.

The ALJ found that Plaintiff had the RFC to "occasionally interact with co-workers and supervisors." R. at 1406. Plaintiff attacks the ALJ's decision, arguing that the ALJ failed to properly evaluate the medical opinion evidence by erroneously giving limited weight to Nurse Practitioner Roach's opinions, despite having treated Plaintiff over the course of several years, and finding that Plaintiff had marked to extreme limitations in her abilities to interact with others. ECF No. 12 at 23-29. As explained below, Plaintiff is correct.

Roach saw Plaintiff from September 2016 to January 2022, making her the medical source with the longest standing relationship with Plaintiff. R. at 53-54, 1041, 1134, 1386, 1427, 1608, 1775, 1889. In November 2017, Roach, as indicated in her Medical Source Statement, found that Plaintiff had "problems concentrating and focusing, mood lability, anxiety, [and] depressed mood" and that Plaintiff had marked loss in her abilities to "work in coordination with

or proximity to others without being unduly distracted" and to "interact appropriately with the public," "accept instructions and respond appropriately to criticism from supervisors," and "get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes." R. at 1050-51. In January 2022, Roach completed a second Medical Source Statement where she noted similar findings. There, Roach noted that Plaintiff had extreme loss in her abilities to "work in coordination with or proximity to others without being unduly distracted," "complete a normal workday or work week without interruptions from psychologically based symptoms," "interact appropriately with the public," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior." R. at 1610-11.

The ALJ did not afford proper consideration to Roach's opinions. The only reason the ALJ gave for discounting Roach's opinions was that "they are not consistent with the claimant's reported level of activities, including working at substantial gainful activity." R. at 1409. The ALJ reasoned that Plaintiff was engaged in substantial gainful activity based on her ability to babysit, because "babysitting requires a certain amount of skill and attention that is commensurate with skills and attention required of competitive employment." R. at 1404. However, as Plaintiff points out (ECF No. 16 at 6-7), Plaintiff only sporadically babysat out of her own home for her aunt's child, who was seven years old at the time of her testimony in 2017. R. at 47-51, 1424-25. Plaintiff babysat her cousin in conjunction with caring for her own children, who were three, eight, and ten years old at the time of her testimony. R. at 48. While babysitting, Plaintiff had the help of her brothers, who were 12 and 18 in 2017. R. at 48-49. She also testified that she had the assistance of her grandmother, who lived upstairs and who would

"constantly" come to cook, "bring [Plaintiff] food," and "make sure the kids are okay." R. at 51. According to Plaintiff, she "basically [ ] only ha[d] to feed" the child because "[h]e's old enough to play with [her] kids in the room [ ] while [she's] doing [her] thing." R. at 49-50. Plaintiff testified that all she did was make sure that he and her own kids were "okay" and "not hurting each other and bad stuff like that." Id. The Commissioner acknowledges that Plaintiff only babysat "during periods of 2016, 2021, and 2022." ECF No. 15 at 16. Plaintiff testified that her babysitting was "more of a favor to [Plaintiff's cousin] than even herself." R. at 51.

Plaintiff's ability to occasionally watch a relative, in her own home with the assistance of others, does not support the ALJ's decision to discount Roach's opinion. See McCleese v. Saul, No. 18-CV-04494 (AT) (SDA), 2019 WL 3037308, at *12 (S.D.N.Y. June 26, 2019), adopted sub nom. by, McCleese v. Berryhill, 2019 WL 3034892 (S.D.N.Y. July 11, 2019) (remanding case where the "ALJ cited to evidence in the record that [plaintiff] engaged in shopping, exercising, light cooking, watching television, reading and socializing with friends, which he found indicated a higher level of functionality than [the doctor's] opinions allowed" because "without some discussion of the rigor or duration of [plaintiff's] daily activities, or other indication that those activities were inconsistent with the limitations discussed by [the doctor], . . . [the] evidence of [plaintiff's] activities did not provide a good reason for discounting [the doctor's] opinions"); Barrie A.L. v. Comm'r of Soc. Sec., No. 20-CV-10831 (GRJ), 2022 WL 3355316, at *5 (S.D.N.Y. Aug. 15, 2022) (remanding where "[t]he ALJ also found Plaintiff's activities of daily living, including work as a seasonal tax preparer for several months in 2018 and 2019, inconsistent with [the doctor's] limitation on concentration" but "[t]his activity, while certainly indicative of some ability to sustain concentration, was performed at

levels below substantial gainful activity for limited periods of time, with significant absences" and "[t]he ALJ did not cite any other activities inconsistent with impaired concentration").

Roach's findings concerning Plaintiff's ability to interact with others were consistent throughout her various examinations of Plaintiff, and they are also consistent with the findings of Dr. Yung, whom the ALJ did not address in his opinion. In December 2014, Dr. Yung indicated that Plaintiff reported a history of low stress tolerance, which caused irritability, and although Plaintiff denied physical aggression, she reported that she could be verbally abusive. R. at 393. Dr. Yung noted that Plaintiff reported not "car[ing] for friendship" and had not had any "peer relationship[s] since childhood." Id. Plaintiff experienced excessive worries which led to irritability and her mood was irritable. Id. And, Dr. Yung also found that Plaintiff presented with "significant symptoms" of generalized anxiety. R. at 394-395.

Moreover, even the opinions that the ALJ found persuasive are consistent Roach's assessment that Plaintiff is limited in her ability to interact with others. In reviewing Plaintiff's records through May 2015, Dr. Bhutwala found moderate limitations in Plaintiff's ability to work in coordination with, or in proximity to, others without being distracted by them, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and her ability to maintain socially appropriate behavior. R. at 92-93. Dr. Bhutwala diagnosed Plaintiff with severe anxiety and personality disorders. R. at 89.

Similarly, in July 2016, Dr. Phillips noted that Plaintiff reported depressive symptoms including dysphoric mood, irritability, and social withdrawal, as well as anxiety-related

symptoms including apprehension, restlessness, and fearfulness of crowds. R. at 416. Like Dr. Bhutwala, Dr. Phillips found that Plaintiff was moderately limited in her ability to relate adequately with others. R. at 418. Dr. Phillips also found Plaintiff moderately limited in her ability to appropriately deal with stress, and he diagnosed Plaintiff with panic disorder, generalized anxiety disorder. R. at 418-19. And in June 2023, Dr. Goldstein noted that Plaintiff reported "depressive symptoms" including "social withdrawal, and "concentration difficulties," as well as anxiety related symptoms such as "irritability, avoidance of social settings," and "difficulty concentrating." R. at 1972-73. Dr. Goldstein also reported that Plaintiff suffered from panic attacks and mood swings. Id. Dr. Goldstein noted that Plaintiff's affect was irritated and concluded that there was mild evidence that Plaintiff was unable to "interact[ ] adequately with supervisors, coworkers, and the public" and "regulat[e] emotions, controlling behavior, and maintaining well-being." R. at 1974. Dr. Goldstein diagnosed Plaintiff with adjustment disorder and unspecific bipolar disorder. R. at 1975. Dr. Kim, too, found moderate limitations in Plaintiff's ability to appropriately deal with stress, and reasoned that Plaintiff's psychiatric problems "may significantly interfere" with her "ability to function on a daily basis." R. at 410.

Additionally, Roach's findings are consistent with Plaintiff's reported symptoms in the record and her testimony at the hearing. At the hearing, Plaintiff testified that she does not get along well with others, socializes very little, and that someone "simply looking at [her]" can make her angry. R. at 57-58, 62, 1429. Plaintiff also reported that she lost her prior job at Burger King after one month because she got into an argument with the manager. R. at 46-47. And, Plaintiff points to a number of instances in the record where she reported being agitated, irritable, disruptive, impulsive, and socially withdrawn, further supporting a finding that she is unable to interact with supervisors and co-workers. ECF No. 12 at 18; see, e.g., R. at 1799 (Plaintiff

reported to Sobia Ilyas, mental-health clinician, in September 2021 that "she can't take the train or be around people"); R. at 1728 (Plaintiff reported in September 2022 to nurse practitioner Matthew Bach that "she still feels agitated and frustrated on most days," "[r]eports issues with interpersonal interactions," "reports not having friends," and that she was "not working because she knows that she will not be able to tolerate the work place dynamics and the professional relationships"); R. at 1722 (Bach noting in October 2022 that Plaintiff was "very guarded [and] irritable throughout interview" and reported "[f]requent episodes of explosive screaming at others"); R. at 1685 (Bach reporting in February 2023 that Plaintiff "[c]ontinues to have an aggressive disposition and irritability" and reported "getting angry at counselor during last psychosocial because she did not like the way in which she was spoke[n] to"); R. at 1621-22 (Plaintiff reporting to Bach in May 2023 that "she continues to struggle with affective dysregulations, and responding disproportionately in anger/aggression to triggers" and that Plaintiff "recognizes that she will 'overreact to the point where she will want to become physical but reports that she usually does not'").

And the ALJ himself found that Plaintiff had "severe impairments" of "episodic mood disorder; adjustment disorder with depressed and anxious mood; bipolar disorder; generalized anxiety disorder; panic disorder; personality disorder; intermittent explosive disorder; obsessive-compulsive disorder; and [PTSD]," which further supports Roach's opinions that Plaintiff experiences difficulties interacting with others. R. at 1404.

The ALJ found that Plaintiff could "occasionally" interact with others, relying on Dr. Kim, who opined that Plaintiff could "relate adequately with others." R. at 1406. The ALJ concluded that Plaintiff's symptoms were adequately accounted for in the RFC with a restriction that she have "limited interaction with others in a low stress work environment." R. at 1407-08.

But the record does not support Dr. Kim's assessment that Plaintiff could adequately relate with others. First, Dr. Kim saw Plaintiff only once, in May of 2015. R. at 408. "ALJs should not rely heavily on the findings of consultative physicians after a single examination," particularly in "the case of mental disabilities," because "the results of a single examination may not adequately describe the claimant's sustained ability to function." Calixte v. Colvin, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *25 (E.D.N.Y. Mar. 31, 2016) (internal quotation marks, alterations, and citations omitted); Gomez v. Comm'r of Soc. Sec., No. 23-CV-04942 (OEM), 2024 WL 4350491, at *8 (E.D.N.Y. Sept. 30, 2024) (noting that "[t]he Second Circuit has 'frequently cautioned' ALJs not to rely too heavily on consultative examiners and non-examining experts, particularly in the context of mental illness where 'a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health'") (quoting Estrella, 925 F.3d at 98).

Second, Dr. Kim's assessment is internally inconsistent. Dr. Kim noted that Plaintiff was "irritable and [ ] has a strong compulsion to clean her house whenever she can." R. at 408. She also noted that Plaintiff reported that if she "is prevented from completing her rituals, she gets very upset." Id. Additionally, Dr. Kim noted that Plaintiff was "arrested for aggravated assault and harassment," and she determined that Plaintiff had "significant OCD symptoms." R. at 409. Dr. Kim diagnosed Plaintiff with PTSD, OCD, generalized anxiety disorder, and unspecified personality disorder and found Plaintiff's psychiatric problems "may significantly interfere with [Plaintiff's] ability to function on a daily basis." R. at 410-11. Yet despite these findings, Dr. Kim concluded that there was "no evidence of limitations" in Plaintiff's ability to "relat[e] adequately with others." R. at 410. But that conclusion is inconsistent with Dr. Kim's own findings that Plaintiff's psychiatric problems "may significantly interfere" with her ability to

function on a daily basis. See Muro v. Berryhill, 412 F. Supp. 3d 254, 264 (E.D.N.Y. 2019) (finding ALJ properly discounted the opinions of two doctors where their opinions "[were] inconsistent with their own findings").

The Commissioner argues that nurse practitioners are not acceptable medical sources whose opinions are eligible for controlling weight under the treating physician rule. ECF No. 15 at 16. Because Plaintiff's claim for benefits was filed on March 6, 2015 (R. at 15, 223-43), the treating physician rule applies. Hutchings v. Berryhill, No. 18-CV-1921 (PAE) (KHP), 2019 WL 5722478, at *9 n.15 (S.D.N.Y. June 28, 2019), adopted by, 2019 WL 5722009 (S.D.N.Y. July 16, 2019) ("The 'treating physician rule' has been eliminated, [it] remains applicable to claims filed before March 27, 2017."). That rule applies controlling weight to an opinion from an acceptable medical source, and regulations exclude the opinion of a nurse practitioner from the scope of acceptable medical sources. Williams v. Colvin, No. 15-CV-4173 (ALC), 2016 WL 3034494, at *9 (S.D.N.Y. May 26, 2016); see also Anthony v. Saul, No. 24-CV-2163, 2025 WL 2848224, at *3 (2d Cir. Oct. 8, 2025) (summary order). The Commissioner is thus correct that the ALJ was "not *required* to give the opinion of a nurse practitioner any weight." Machado v. Saul, No. 18-CV-1498 (JCM), 2019 WL 3228968, at *4 n.4 (S.D.N.Y. July 17, 2019) (italics added). But the ALJ is permitted to consider opinions from "other sources," such as from a nurse practitioner, and the ALJ here did consider Roach's opinion. See Wynter v. Berryhill, No. 19-CV-05592 (AT) (RWL), 2020 WL 5604821, at *16 (S.D.N.Y. Aug. 27, 2020), adopted by, 2020 WL 5604049 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks and citation omitted) (explaining that the court can review the ALJ's opinion to ensure that the weight attributed to "other source" opinions, such as a nurse practitioner, is attributed appropriate weight).

Here, having decided to review Roach's opinions, the ALJ was required to adequately explain his basis for affording it little weight. As explained, the ALJ erred in discounting it based solely on Plaintiff's stated activity of sporadically babysitting. That reason for giving Roach's opinions little weight is not supported by the record. See, e.g., Vinicombe v. Comm'r of Soc. Sec., No. 19-CV-4412 (MKB), 2020 WL 9816024, at *7-8 (E.D.N.Y. Nov. 30, 2020) (applying treating physician rule and remanding for ALJ to give opinion of nurse practitioner "some extra consideration" where the nurse practitioner's opinion was "particularly relevant because she was Plaintiff's only treating source during" the disability period) (collecting cases); Emsak v. Colvin, No. 13-CV-3030 (PKC), 2015 WL 4924904, at *10-11 (E.D.N.Y. Aug. 18, 2015) (holding ALJ erred by assigning "little weight" to the opinion of a nurse practitioner who saw plaintiff regularly and managed his medication, and that this lapse was "even more significant because she was one of only two professionals with whom [the] [p]laintiff had an ongoing treating relationship"); Mejia v. Barnhart, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003) (finding that a treating psychotherapist's report, though not an acceptable medical source, "should have been accorded more than 'little' weight" because the treating psychotherapist "saw [the] plaintiff on a regular basis and offered a diagnosis consistent with that of the treating psychiatrist").

In short, Plaintiff's testimony regarding her occasional babysitting of a relative's child does not support the ALJ's decision to discount Roach's opinion.[5] Jurman v. Berryhill, No. 16-CV-6874 (NSR) (PED), 2018 WL 3300712, at *14 (S.D.N.Y. Mar. 14, 2018), adopted by, 2018

[5] As Plaintiff also points out (ECF No. 16 at 7 n.4), the cases relied on by the Commissioner are distinguishable because those cases involved circumstances where the plaintiff had engaged in substantial hours of babysitting or was involved in other activities of daily living. Young v. Kijakazi, No. 20-CV-03604 (SDA), 2021 WL 4148733, at *10 (S.D.N.Y. Sept. 13, 2021) (claimant's daily activities included "her ability to babysit, plans to vacation in North Carolina and attempt to secure custody of her grandson"); Tanonia P. v. Comm'r of Soc. Sec., No. 24-CV-00138, 2025 WL 2467032, at *9 (W.D.N.Y. Aug. 27, 2025) (claimant babysat "for a two-year-old toddler, *forty hours per week*") (emphasis added).

WL 2383149 (S.D.N.Y. May 24, 2018) (finding the ALJ "overstated plaintiff's ability to engage in the activities described" where the "ALJ noted that plaintiff is able to babysit for her grandchildren" but plaintiff testified that "she watches the two older children (usually not the baby) only once in a while, for a couple of hours") (internal quotation marks and citations omitted); Hickey v. Comm'r of Soc. Sec., No. 18-CV-7053 (PKC), 2020 WL 376585, at *4 (E.D.N.Y. Jan. 23, 2020) (finding that the ALJ "improperly relied on the inconsistencies between Plaintiff's reported daily activities and [the doctor's] opinion to discount that opinion" because "[p]laintiff's reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according the treating physician's opinion limited weight") (internal quotation marks, alteration, and citation omitted). I thus recommend that the case be remanded for the ALJ to properly consider Roach's opinion.

2. Substantial evidence does not support the ALJ's RFC assessment with respect to Plaintiff's ability to maintain a regular work schedule.

Plaintiff also argues that the RFC does not make allowances for additional breaks, absences, or time off-task to properly address Plaintiff's limitations. ECF No. 12 at 29. Specifically, Plaintiff points to the opinion of Roach, who found that Plaintiff would miss substantial time from work. R. at 1050 (Roach indicating in November 2017 that Plaintiff's "impairments or treatment would cause [Plaintiff] to be absent from work" "[m]ore than 3 times a month"); R. at 1609 (Roach indicating in January 2022 that Plaintiff's impairments would cause her to be absent from work more than three times a month). Plaintiff notes that Dr. Bhutwala and Dr. Kim also found that she was limited in her ability to maintain regular attendance or a regular work schedule. ECF No. 12 at 30. The Commissioner counters that the ALJ's determination that Plaintiff was limited to simple, unskilled work and had to maintain concentration and focus for up to two hours at a time accounted for any findings concerning

Plaintiff's inability to stay on task or keep a regular schedule. ECF No. 15 at 21-22. For the reasons explained below, Plaintiff is correct that this aspect of the RFC determination is not supported by substantial evidence.

During the hearing before the ALJ, Plaintiff's attorney asked how many unscheduled absences a month a person is allowed to maintain employment, and the Vocational Expert responded that only one unscheduled absence per month was permitted. R. at 1434-35. The ALJ found that Plaintiff had no limitation "[w]ith regard to concentrating, persisting, or maintaining pace," provided that she was restricted to "work in a low stress work environment (*i.e.* no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes)." R. at 1405-06. The ALJ also found that Plaintiff was "able to consistently maintain concentration and focus for up to two hours at a time," and that she was restricted "to simple tasks requiring no more than two hours of concentration and focus at a time." R. at 1406, 1411. The ALJ did not address Plaintiff's ability to maintain a regular work schedule.

Plaintiff testified that she did not take public transportation because it makes her feel "closed in" and that she does not want to be "around that many people," requiring her to rely on family members to drive her to appointments.[6] R. at 54-55, 1428. Additionally, in May 2015, Dr. Kim concluded that Plaintiff had moderate limitations in maintaining a regular schedule and that Plaintiff's psychiatric problems "may significantly interfere with [Plaintiff's] ability to function

---

[6] Although Plaintiff did not testify during the hearing that she was unable to take public transportation due to her anxiety, she reported that to other doctors. See, e.g., R. at 410 (Dr. Kim noting that Plaintiff reported being unable to use public transportation by herself because of her anxiety); R. at 418 (Dr. Phillips noting Plaintiff "is not able to take public transportation due to anxiety"); R. at 1972 (Dr. Goldstein noting that Plaintiff reported her anxiety triggers included "[e]nclosed spaces"). Plaintiff also points to other record evidence that shows that she was frequently late to medical appointments or missed them altogether. ECF No. 12 at 29-30.

on a daily basis." R. at 410. Dr. Kim noted that Plaintiff did not have a driver's license and did not take public transportation by herself due to her anxiety. Id. Consistent with Dr. Kim's findings, in June 2015, Dr. Bhutwala noted that Plaintiff had moderate difficulties in maintaining regular attendance, punctuality, and completing a normal workday and workweek without interruptions from psychologically based symptoms, including her anxiety. R. at 89, 92. And in June 2023, Dr. Goldstein concluded that there was mild evidence of limitations in Plaintiff's ability to "sustain[ ] an ordinary routine and regular attendance at work." R. at 1974.

Like the other medical sources, Roach also found that Plaintiff had "problems concentrating and focusing" and that Plaintiff's impairments would cause her to be absent from work more than three times a month. R. at 1050. In November 2017, Roach concluded that Plaintiff had a marked loss in "complet[ing] a normal workday or work week without interruptions from psychologically based symptoms" and "perform[ing] at a consistent pace without an unreasonable number and length of rest periods." R. at 1051. And in January 2022, Roach found that Plaintiff had extreme loss in "maintain[ing] attendance and be[ing] punctual" and "complet[ing] a normal workday or work week without interruptions from psychologically based symptoms." R. at 1610.

Only Dr. Phillips found that there was no evidence of limitation in Plaintiff's ability to maintain attention and concentration and maintain a regular schedule. R. at 418. However, Dr. Phillips noted that Plaintiff reported being unable to concentrate long enough to read and that Plaintiff was not able to take public transportation due to her anxiety. Id. Dr. Phillips also determined that Plaintiff's reported symptoms were "consistent with psychiatric problems," but concluded that the symptoms did not "appear significant enough to interfere with [Plaintiff's] ability to function on a daily basis." Id.

The medical opinions in the record consistently noted Plaintiff's anxiety as it related to public transportation and noted that Plaintiff had at least some limitation in her ability to maintain a regular work schedule. Roach also concluded that Plaintiff would miss at least three workdays a month. R. at 1050, 1610. The Vocational Expert testified that an unskilled worker, such as Plaintiff, could not maintain employment if she missed more than one day of work a month. R. at 1434-35. Yet, the ALJ's RFC determination failed to address Plaintiff's ability to attend work regularly.

In that respect, this case is indistinguishable from Nunez v. Comm'r of Soc. Sec., 164 F.4th 60 (2d Cir. 2025). In Nunez, the "medical opinions[ ] and Nunez's testimony, indicated that Nunez had at least moderate limitations in his ability to maintain a regular work schedule," and the vocational expert testified that there would be no employment for an individual who had more than one unscheduled absence per month. Id. at 73. There, "the ALJ nonetheless made an RFC determination that failed to address Nunez's ability to attend work and stay on task." Id. "Yet in the RFC determination, the ALJ did not specify any limitations reflecting Nunez's reduced ability to stay on task or attend work regularly[,] [n]or did [the ALJ] provide any reason for or evidence to support her implicit determination that [Nunez] lacked these limitations." Id. at 70. The Second Circuit concluded that "[t]he failure to account for Nunez's likelihood of absences and unproductive time, particularly considering the largely unrebutted evidence that Nunez will be absent from work and off task to an extent that the vocational expert testified is disabling, warrants remand." Id. at 73.

So, too, here. The ALJ failed to address altogether in the RFC determination whether Plaintiff could maintain a regular work schedule. And there was ample evidence in the record that Plaintiff was limited in her ability to maintain a regular work schedule. Even the ALJ

himself noted the medical opinions finding that Plaintiff had difficulty maintaining a schedule. R. at 1407-08 (noting Dr. Kim's finding that Plaintiff had "moderate limitations in maintaining attention and concentration [and] maintaining a regular schedule"), 1408-09 (noting Dr. Goldstein's conclusion that Plaintiff had "mild limitations" in the ability to "sustain an ordinary routine and regular attendance at work"). Given the consistent record evidence that Plaintiff would experience some level of difficulty maintaining a regular work schedule, the record does not contain substantial evidence supporting the ALJ's rejection of that evidence and his RFC determination that Plaintiff could maintain a regular work schedule and not be absent more than one day a month. See, e.g., Patrick v. Kijakazi, No. 23-CV-10942 (LJL), 2026 WL 1430180, at *16 (S.D.N.Y. May 20, 2026) (remanding where "the ALJ's hypothetical did not account, even implicitly, for any degree of absenteeism, despite the experts' consistent finding that Plaintiff had moderate limitations in the ability to maintain regular attendance") (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for judgment on the pleadings be **GRANTED**, and this case be **REMANDED** for further administrative proceedings consistent with this report.

DATED: July 30, 2026
New York, New York

VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Lewis J. Liman. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**